BOURDON v. PLAZA OPERATING CO.

(Supreme Court, Appellate Division, First Department.   December 31, 1913.)

MASTER AND SERVANT (§ 234*)—LIABILITY FOR INJURIES—TOOLS AND APPLIANCES.

Plaintiff, a baker employed by defendant, was required, while a dough mixer about $5\frac{1}{2}$ feet high was in operation, to scrape portions of the dough from the sides of the mixer and for that purpose was provided with a bench to stand on, consisting of a board fastened to two upright boards which were cut into an inverted V-shape.   While standing on such bench scraping the opposite wall of the mixer, the bench slipped, throwing him forward and causing his hand to come in contact with revolving knives in the mixer.   It did not appear that he could not reach where it was necessary to scrape without tilting the bench.   Held that, assuming that the bench was a tool, defendant was not liable, even though, as claimed, the floor was slippery, as it was apparent that the bench would not slip until the lateral pressure of plaintiff's weight became sufficient to shove it, a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

condition which he knew would result if he so arranged his weight, and hence the accident was caused by his own carelessness.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 684–686, 706–709; Dec. Dig. § 234.*]

Appeal from Trial Term, New York County.

Action by Auguste Bourdon against the Plaza Operating Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Theodore H. Lord, of New York City, for appellant.

Henry L. Scheuerman, of New York City, for respondent.

HOTCHKISS, J. The action arose under the Employers' Liability Law as amended in 1910. Plaintiff was a baker employed by defendant. In making bread, he was called upon to use an electrically operated dough mixer, which stood on a wooden footing about 5½ inches above the floor, the top of the machine being about 5 feet 5½ inches from the floor. The upper part of the machine was a large iron receptacle, the capacity of which was from 1½ to 2 barrels of flour and about 28 gallons of water. Inside this were blunt blades or arms revolving at the rate of about 17 or 18 revolutions a minute. When revolving, the blades came within four inches of the top of the receptacle. In operation, the dough was thrown up against, and portions stuck to, the side of the receptacle, making it necessary for the operator to scrape them off, and for that purpose plaintiff was supplied with a scraper, described as a blunt knife blade with a wooden handle. The machine was started and stopped by an electric button, but the plaintiff's evidence justified the finding that it was not practical to stop the machine to scrape the sides during the process of kneading because of the danger of the dough setting, thus affecting its quality. To enable plaintiff to reach and scrape the inside of the receptacle, a bench was provided for him to stand on. There were in fact three of these benches. Each was about 18 inches long, 10¾ inches wide, and 17 inches high. The top of each was a board, fastened to the under side of which at either end were two upright boards, the ends resting upon the floor being cut into an inverted V-shape, thus leaving two points on which the bench rested. The testimony was contradictory as to the condition of these benches, plaintiff's tending to show that they were shaky, and the defendant's that they were firm; but the evidence did not show that the accident was due to any defect in the bench on which plaintiff stood at the time of the accident. The evidence was also contradictory as to the condition of the floor; plaintiff's evidence tending to show that there were "always little drops of water" on the floor, and that it was customary to throw down corn meal to render the floor less slippery, and the defendant's evidence tending to show that the floor was kept dry. While standing on one of these benches, leaning over, with his right hand scraping the opposite wall of the receptacle, the bench slipped, throwing plaintiff for-

ward; his hand coming in contact with the revolving knives, causing injuries to his thumb, which was afterwards amputated. Assuming that the bench was a tool, it is apparent that it would not slip until the lateral pressure of plaintiff's weight became sufficient to shove it out and from the machine, a condition which he knew perfectly well would result when he reached over far enough to disturb his center of gravity. Whether he thus arranged his weight was a matter entirely within his own control. There is no evidence to show that he could not reach where it was necessary to scrape without thus tilting the bench, so that the accident appears to have been one brought about by his own carelessness. I do not see that the fact that the floor was slippery is of any importance. Such a condition would tend to decrease the friction of the ends of the bench resting on the floor and thus cause the bench to slip a little sooner than it otherwise would if plaintiff threw his weight too far forward.

Upon the whole case, there was no proof of defendant's negligence. The judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.